[Cite as *In re B.W.*, 2025-Ohio-4864.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: B.W.<br>(DOB 2-4-17)<br><br>(Mark Barone, Appellant) | Case No. 25CA007<br><br><u>Opinion & Judgment Entry</u><br><br>Appeal from the Court of<br>Common Pleas of Holmes County,<br>Juvenile Division,<br>Case No. 23N029<br><br>Judgment:   Affirmed<br><br>Date of Judgment:  October 23, 2025 |

BEFORE: Andrew J. King; Robert G. Montgomery; David M. Gormley, Judges

APPEARANCES: Jacquelyn M. Dossi, for Appellant Mark Barone; Robert K. Hendrix, for Appellee Holmes County Department of Job and Family Services

*Gormley, J.*

**{¶1}** Appellant Mark Barone challenges a judgment of the juvenile court in Holmes County, which awarded permanent custody of his son, B.W., to Holmes County Children's Services (the "Agency").  Barone argues here that the trial court wrongly denied his request for a continuance at an adjudicatory hearing, that the court erred in permitting his counsel to withdraw, and that the permanent-custody determination was premature.  Because we see no error in the trial court's rulings, we now affirm.

**The Key Facts**

**{¶2}** In the course of earlier private-custody proceedings in the juvenile court in Holmes County in 2018, that court issued a no-contact order prohibiting Barone from having contact with B.W.  That same court in that case then granted custody of B.W. to B.W.'s grandmother until February of 2023, when concerns about B.W.'s safety led the

juvenile court in Holmes County to grant emergency temporary custody of B.W. to the Agency.

**{¶3}** The Agency then filed a complaint in the trial court in this case alleging that B.W. and his siblings — who were also in their grandmother's custody — were abused, neglected, and dependent children. Barone appeared at the juvenile court for the February 2023 temporary-custody hearing, where he acknowledged receipt of the Agency's complaint and requested that counsel be appointed for him. The court then appointed attorney Norman Miller to represent Barone and scheduled an adjudicatory hearing for May 2, 2023. Barone did not appear at that hearing.

**{¶4}** Attorney Miller informed the court that he had sent Barone seven letters and had attempted to make phone and text contact with him, all without response. Miller moved for a continuance, but the trial court denied that motion based on Barone's prior acknowledgment of the complaint and lack of participation. The court granted Miller's subsequent request to withdraw as counsel and adjudicated B.W. a dependent child. At a dispositional hearing on June 14, 2023 — at which Barone did not appear and was not represented by counsel — the court determined that Barone was not required to be added to case-plan services.

**{¶5}** At subsequent review hearings in 2023 and 2024, Barone — represented by newly appointed counsel — appeared by telephone from Buffalo, New York, where he was living without steady employment or housing. The trial court repeatedly advised Barone that he needed to address the 2018 no-contact order in the private-custody case before he could pursue parenting time or services with B.W. in this dependency case. Barone acknowledged those instructions but did not act until January 29, 2025, when he

filed a motion in the private-custody case to terminate the no-contact order that had been issued in that case.

{¶6} The trial court granted permanent custody of B.W. to the Agency on March 28, 2025, finding that Barone had abandoned B.W., had demonstrated a lack of commitment toward him, and was unwilling to provide basic necessities. Barone now appeals that decision.

## Barone's Continuance Request Was Properly Denied Due to His Voluntary Absence

{¶7} We review under the abuse-of-discretion standard a trial court's decision to grant or deny a continuance. *Hartt v. Munobe*, 67 Ohio St.3d 3, 9 (1993). An abuse of discretion connotes more than a mere error in law or judgment; it implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8} Where, as in this case, the denial of a continuance implicates a parent's fundamental liberty interest in the care, custody, and management of his or her children, courts analyze whether the overall proceeding was fundamentally fair under due-process principles. *In re Gibby*, 2004-Ohio-2708, ¶ 24-25 (5th Dist.).

{¶9} In evaluating whether the trial court abused its discretion by denying a continuance request, we apply a balancing test considering (1) the length of the requested delay, (2) whether other continuances had been requested and granted, (3) the convenience or inconvenience to the parties, witnesses, counsel, and court, (4) whether the delay was for legitimate reasons or was instead dilatory, purposeful, or contrived, (5) whether the party contributed to the circumstances giving rise to the request, (6) whether

denying the continuance resulted in identifiable prejudice to the party's case, and (7) the complexity of the case. *Id*. at ¶ 28-29.

**{¶10}** A continuance request based on a party's absence must be based on unavoidable, not voluntary, absence. *Hartt* at 9. Without any explanation about a party's absence, the trial court is justified in assuming the absence is voluntary. *In re J.S.*, 2015-Ohio-3111, ¶ 15 (5th Dist.).

**{¶11}** Barone failed, without explanation, to appear at the May 2023 adjudicatory hearing. In the three months between the February temporary custody hearing — where he acknowledged receipt of the complaint — and that May adjudicatory hearing, Barone's attorney sent him seven letters and attempted without success to make phone contact with him. Barone did not maintain contact with his attorney during this period, and Barone did not attempt to communicate with the court.

**{¶12}** On balance, these factors weigh against him and justify the trial court's denial of his request for a continuance. *See Matter of J.B.*, 2018-Ohio-397, ¶ 25-26 (5th Dist.) (counsel offered no explanation for parent's absence and could not assure the court that the parent would appear at a future date); *In re Laigle*, 2006-Ohio-829, ¶ 20 (5th Dist.) (no evidence that appellant was unavoidably absent); *In re Gibby*, 2004-Ohio-2708, at ¶ 32 (5th Dist.) (parent never attended scheduled hearings, was served notice by certified mail, and had no contact with child for over a year); *In re Young*, 1999 WL 1221588, *2 (10th Dist. Dec. 21, 1999) (mother was aware of hearing date but gave no reason for absence and made no attempts to contact her attorney or the court).

**{¶13}** Further, the adjudicatory proceeding was fundamentally fair, given Barone's actual notice of the complaint, prior appearance acknowledging receipt of that complaint, voluntary nonappearance, and lack of communication.

**{¶14}** Barone failed, without explanation, to appear or to provide evidence that he was unavoidably absent. The trial court correctly assumed Barone's absence was voluntary. Thus, the trial court's decision to deny Barone's continuance request was not arbitrary, unreasonable, or unconscionable. Barone's first assignment of error is overruled.

## Barone's Counsel Was Properly Permitted to Withdraw Based on Inferred Waiver

**{¶15}** We apply an abuse-of-discretion standard when reviewing a trial court's decision to allow counsel to withdraw. *State v. Williams*, 2003-Ohio-4396, ¶ 135.

**{¶16}** Parents are entitled to representation by legal counsel at all stages of juvenile-court proceedings in custody matters, and once appointed, an attorney may withdraw only with the consent of the court and with a showing of good cause. *In re W.C.*, 2013-Ohio-153, ¶ 20 (12th Dist.).

**{¶17}** A parent's right to counsel, however, is not absolute and may be waived. *In re R.K.*, 2018-Ohio-23, ¶ 5. To ascertain whether waiver is inferred, the court must consider the total circumstances of each case, including the background, experience, and conduct of the parent. *In re A.S.*, 2010-Ohio-1441, ¶ 28 (8th Dist.). Specifically, the court must ascertain whether counsel's attempts to communicate with his or her client were reasonable and must verify that the failure of that communication resulted in the inability of counsel to determine the client's wishes. *In re R.K.* at ¶ 6.

**{¶18}** Where a party fails to maintain contact with counsel, fails to appear for scheduled hearings despite receiving notice, and fails to cooperate with counsel and the court, the court may infer that the party has waived his or her right to counsel and may grant counsel's request to withdraw. *In re Rachal G.*, 2003-Ohio-1041, ¶ 14 (6th Dist.); *In re Savanah M.*, 2003-Ohio-5855, ¶ 34 (6th Dist.).

**{¶19}** The same factual circumstances that supported denial of the continuance request support the trial court's implicit inference of waiver. Barone — despite attorney Miller's appointment and repeated attempts at communication — maintained no contact with Miller and failed to appear at the adjudicatory hearing. As a result of Barone's lack of communication, Miller was unable to determine Barone's wishes. Further, Barone did not have contact with B.W. for several years.

**{¶20}** These circumstances support the trial court's finding of voluntary waiver of counsel by Barone. *See e.g., In re A.S.* at ¶ 30 (parent failed to contact counsel for six months, failed to respond to letters and phone calls, and did not appear at a hearing despite notice); *In re Rachal G.* at ¶ 16 (parent demonstrated disinterest from the beginning, failed to cooperate, and made no subsequent appearances); *In re Savannah M.* at ¶ 37 (parent was personally served, failed to appear, and failed to communicate with counsel despite the attorney's repeated attempts to speak with that parent).

**{¶21}** The record shows that the trial court had sufficient information to ascertain that attorney Miller's communication attempts were reasonable and that his inability to reach Barone prevented him from determining Barone's position. Barone's complete absence of participation distinguishes this case from situations where a parent has made sporadic contact or has demonstrated at least intermittent engagement with counsel. The

sustained and total nature of Barone's nonresponsiveness prior to his counsel's withdrawal indicates a conscious decision to forgo any participation in the adjudicatory hearing.

{¶22} We note that Barone also references a dispositional hearing held on the same day as the scheduled adjudicatory hearing, but that other hearing concerned case plans for B.W.'s mother and grandmother. Barone's own case-plan disposition — for which he was also absent — was scheduled for June 14, 2023. And although Barone was not represented by counsel at that hearing, he took no action to request the appointment of counsel after the properly permitted withdrawal of attorney Miller. *See In re Williams*, 2004-Ohio-678, ¶ 10 (10th Dist.). Barone's second assignment of error is overruled.

## Permanent Custody Was Properly Granted to the Agency

{¶23} Barone's third and fourth assignments of error challenge the substance of the permanent-custody determination itself. A permanent termination of parental rights is described as the family-law equivalent of the death penalty, so parents must be afforded every protection the law allows. *In re L.A.*, 2024-Ohio-3436, ¶ 42 (5th Dist.).

{¶24} We will not reverse a trial court's determination in a permanent-custody case unless the decision was against the manifest weight of the evidence. *Matter of D.D.*, 2023-Ohio-4147, ¶ 12 (10th Dist.).

{¶25} We turn first to the 2018 no-contact order — which was issued in a juvenile-court case different from the one that generated the appeal in this case — as that order is central to both assignments of error.

{¶26} A party's request for the modification of a court's order must be presented in the same case and in the same court where the order originated. *See Cooper v. Cooper*, 10 Ohio App.3d 143, 144 (3d Dist. 1983); *Rhoades v. Rhoades*, 40 Ohio App.2d 559, 566 (1st Dist. 1974).

{¶27} The trial court instructed Barone on multiple occasions that he needed to address the no-contact order in the juvenile-court case in which that order had been issued.  As long as the no-contact order remained in place, the trial court in this case could not grant parenting time to Barone or allow him to engage in programs aimed at helping him to establish or reestablish a parental relationship with B.W.  Barone failed to seek modification of the no-contact order in the right court and case until January 29, 2025, which was just weeks before the trial court in this case issued its permanent-custody decision.

{¶28} And Barone's lack of inclusion in case-plan services was a direct result of his failure to timely seek modification of the no-contact order.

{¶29} It is true that "'a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.'"  *Matter of D.D.*, 2023-Ohio-4147, at ¶ 24 (10th Dist.), quoting *In re H.M.K.*, 2013-Ohio-4317, ¶ 95 (3d Dist.).  But, as the trial judge made known to him, Barone needed to first address the no-contact order against him.  Barone could not have been reunified with B.W. while that order remained in place.

{¶30} Even so, a children's services agency's reasonable-efforts obligation does not apply in all circumstances.  The relevant statute lists several exceptions, one of which applies in cases where the parent has abandoned the child.  R.C. 2151.419(A)(2)(d).

Because the trial court found that Barone had abandoned B.W., the Agency had no obligation to try to reunite B.W. with his father. *See Matter of C.H.*, 2018-Ohio-3459, ¶ 13 (5th Dist.) (abandonment is an independently sufficient basis for the granting of a motion for permanent custody).

{¶31} The trial court was not responsible for Barone's failure to timely seek the termination or modification of the no-contact order. Barone's third and fourth assignments of error are overruled.

{¶32} For the reasons explained above, the judgment of the juvenile division of the Court of Common Pleas of Holmes County is affirmed. Costs are to be paid by Appellant Mark Barone.

By: Gormley, J.;

King, P.J. and

Montgomery, J. concur.