[Cite as *In re A.M.*, 2011-Ohio-6476.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

A.M.

MINOR CHILD

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. Sheila G. Farmer, J.
Hon. John W. Wise, J.

Case No. 2011 CA 00182

O P I N I O N

CHARACTER OF PROCEEDING:      Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2008 JVC 01284

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 12, 2011

APPEARANCES:

For Appellant

MARY G. WARLOP
ABNEY LAW OFFICE
116 Cleveland Avenue, NW, Suite 500
Canton, Ohio 44702

For Appellee

LISA A. LOUY
STARK COUNTY DJFS
110 Central Plaza South, Suite 400
Canton, Ohio 44702

*Wise, J.*

{¶1}    Appellant Krystal Miller appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of her minor son to Appellee Stark County Department of Job and Family Services ("SCDJFS"). The relevant facts leading to this appeal are as follows.

{¶2}    Appellant is the mother of the child at issue in this matter, A.M., born in 2003. The child's father is Nicholas Chris, who is not a participant in the present appeal.

{¶3}    On November 13, 2008, SCDJFS filed a complaint in the Stark County Court of Common Pleas, Juvenile Division, alleging A.M. and his siblings to be dependent, and/or neglected children. SCDJFS filed the complaint based on concerns about appellant's housing situation and suspected drug use.

{¶4}    The matter proceeded to an adjudicatory hearing. On January 30, 2009, the trial court issued a judgment entry finding A.M. and his siblings to be dependent and set forth findings of fact and conclusions of law. Regarding disposition, the children were placed under protective supervision, with custody to remain with appellant.

{¶5}    Appellant initially made progress on her case plan goals by, among other things, participating in drug and alcohol assessments and treatment, completing her parenting evaluation at Northeast Ohio Behavioral Health and pursuing recommended treatment related to said evaluation, maintaining A.M. in counseling, and working on housing and employment issues.

{¶6}    However, appellant's progress on the case plan did not endure, and SCDJFS was granted temporary custody of the children in October 2009. A.M. was

placed into a planned permanent living arrangement ("PPLA") on or about November 18, 2010.[1] Based in part on A.M.'s subsequent behavioral improvements in his foster family setting, SCDJFS decided to file a permanent custody motion, which was accomplished on May 25, 2011.

{¶7} On July 11, 2011, an evidentiary hearing was conducted on the permanent custody motion. Appellant did not appear, although her trial counsel represented her at the hearing after a requested continuance was denied. The child's father did not appear for the evidentiary hearing, despite proper service, and has not recently participated in the agency's case plan.

{¶8} The trial court issued a judgment entry on July 20, 2011, granting permanent custody of A.M. to the agency.

{¶9} On August 18, 2011, appellant filed a notice of appeal. She herein raises the following three Assignments of Error:

{¶10} "I.  THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS GUARANTEED UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND GUARANTEED UNDER SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION, AND ERRED AS A MATTER OF LAW WHEN IT PROCEEDED WITH A PERMANENT CUSTODY TRIAL WHEN MOTHER HAD NOT BEEN PROPERLY SERVED WITH THE MOTION OR NOTICE OF THE HEARING.

{¶11} "II.  THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING MOTHER'S MOTION TO CONTINUE.

---

[1]  In the meantime, a change of legal custody was granted regarding A.M.'s siblings. The status of the siblings is not the subject of the present appeal.

**{¶12}** "III.   THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE GROUNDS EXISTED FOR PERMANENT CUSTODY OR THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY."

I.

**{¶13}** In her First Assignment of Error, appellant contends the trial court violated her due process rights by proceeding on the permanent custody evidentiary hearing on July 11, 2011.  We disagree.

**{¶14}** In the case sub judice, the court's docket states that appellant was served with notice of the permanent custody hearing by ordinary U.S. mail, after certified mail was returned marked "unclaimed." Appellant nonetheless points out that the caseworker, who had worked with appellant since 2007, expressed some uncertainty as to whether appellant still lived at the Sixth Street SW address, as appellant's dog was gone and the caseworker's calls had gone unreturned. See Tr. at 10.

**{¶15}** R.C. 2151.29 provides that notice of a permanent custody motion and hearing may be made personally, by certified mail, or by publication in the event that a person to be served cannot be located through reasonable efforts. See *In re D.P.*, Cuyahoga App.No. 86271, 86272, 2006-Ohio-937, ¶ 18. But a strict reading of the statute indicates that personal or residence service is necessary, unless the juvenile court specifically finds such form of service impractical: "Service of summons, notices, and subpoenas, prescribed by section 2151.28 of the Revised Code, shall be made by

delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence. If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail. ***." R.C. 2151.29, supra.

{¶16} However, Civ.R. 4.3(B)(1) clearly states: "Evidenced by return receipt signed by any person, service of any process shall be by certified or express mail unless otherwise permitted by these rules * * * ." Civ.R. 4.6 permits service to be completed by ordinary mail if an attempt at service via certified mail fails as unclaimed.

{¶17} It is well-established that if there is a conflict between the rule and the statute, the court's rules prevail on procedural matters, but the legislature's statutes prevail on substantive matters. See *State ex rel. Sapp v. Franklin County Court of Appeals,* 118 Ohio St.3d 368, 2008–Ohio–2637, 889 N.E.2d 500, ¶ 28.

{¶18} Upon review of the record, we find proper service of the permanent custody motion and hearing was accomplished under the Ohio Civil Rules. Appellant's due process rights were not disregarded as to service.

{¶19} Appellant's First Assignment of Error is overruled.

II.

{¶20} In her Second Assignment of Error, appellant contends the trial court erred in denying her trial counsel's motion to continue the hearing after appellant failed to appear. We disagree.

{¶21} The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court. *Polaris Ventures IV, Ltd. v. Silverman,* Delaware App.No. 2005 CAE 11 0080, 2006-Ohio-4138, ¶ 14, citing *State v. Unger* (1981), 67

Ohio St.2d 65, 423 N.E.2d 1078. In order to find an abuse of discretion, we must find the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. To constitute a sufficient ground for a continuance because of the absence of a party, it must appear that: the party's absence is unavoidable, rather than voluntary; the party's presence at trial is necessary; the continuance is made in good faith; and, the party will probably be able to attend court at some reasonable future time. *State ex rel. Buck v. McCabe* (1942), 140 Ohio St. 535, 538, citing 17 Corpus Juris Secundum, Continuances, p. 210, § 27. A litigant does not have a right to unreasonably delay a trial. See *Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 9, 1993-Ohio-177.

{¶22} In the case sub judice, appellant had made little or no progress on her case plan and had not been in contact with the caseworker for several months. Her trial counsel was only able to report that appellant had not responded to her letters, and that counsel did not know why she did not show for the hearing. Tr. at 3. Upon review, we find reasonable notice and opportunity to be heard were afforded to appellant under the facts and circumstances presented, and that the trial court did not err or abuse its discretion in declining to continue or reset the hearing to a later date.

{¶23} Appellant's Second Assignment of Error is overruled.

III.

{¶24} In her Third Assignment of Error, appellant contends the trial court erred in granting permanent custody of A.M. to the agency. We disagree.

{¶25} R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶26} "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶27} "(b) The child is abandoned.

{¶28} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶29} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."

{¶30} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially

caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." See R.C. 2151.414(E)(1).

**{¶31}** As an initial matter, we note the trial court in the case sub judice implicitly relied on both R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(b), supra, as well as a finding, in implicit reference to R.C. 2151.414(B)(1)(d), that the child had "been in the temporary custody of the Agency for 12 months or more within a consecutive 22 month period ***." Judgment Entry, July 20, 2011, at 1. The procedural history of this matter clearly reveals that at the time of the filing of the present permanent custody on May 25, 2011, A.M. had been in agency custody for more than twelve months within a twenty-two month period. Under these circumstances, even though the trial court thoroughly reviewed the evidence pursuant to R.C. 2151.414(B)(1)(a) and (b), and both sides have cogently argued accordingly in the briefs, we are compelled, based on R.C. 2151.414(B)(1)(d), to directly proceed to an analysis of the best interest issue. See, e.g., *In re Walton/Fortson Children,* Stark App.No. 2007CA00200, 2007-Ohio-5819, ¶ 14; *In re T.S.,* Franklin App.Nos. 07AP-624, 07AP-625, 2007-Ohio-6645, ¶ 8-¶ 9.

**{¶32}** Proceeding to the best interest issue, we first note that as an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible

evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App.No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Furthermore, it is well-established that the trial court is in the best position to determine the credibility of witnesses. See, e.g., *In re Brown,* Summit App.No. 21004, 2002-Ohio-3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. It is also well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children* (Nov. 13, 2000), Stark App.No. 2000CA00244, quoting *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.

**{¶33}** In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

**{¶34}** "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

**{¶35}** "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶36} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

{¶37} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶38} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶39} In the case sub judice, the case worker, Sheri Vandeborne, testified that A.M. has been diagnosed with ADHD and has other behavioral issues. Tr. at 17. In the foster home he has been in since November 2010, A.M. has been doing "exceptionally well" and has become involved in sports. Tr. at 18-20. No appropriate relative placements had been found. Tr. at 19.

{¶40} Vandeborne also testified that the visits between A.M. and appellant generally went well. Tr. at 20. She also testified that the child asks about his siblings. Tr. at 20-21. The child's therapist, Jane Biehl, testified that she had not discussed adoption with the child. Tr. at 27. The guardian ad litem, Joanne Cox, testified that she did not specifically discuss adoption with the child; they simply had a "general discussion" regarding his desire to have a permanent residence. Tr. at 29. When asked if she had ever explained to him that adoption would mean not seeing his biological family anymore, the guardian stated that she was not sure she put it that way. Id. The guardian stated that she assumed that the foster parent would make allowances for

some kind of connection between the siblings and A.M. Id. Appellant maintains the guardian was not sure that the distinction between adoption and permanent custody was clear to the child.  Id. The child also expressed to the guardian a desire to be in contact with his siblings. Tr. at 30.

{¶41} Appellant, asserting that permanent custody is not in the child's best interest, contends that the interest A.M. has shown in maintaining contact with his siblings cannot be enforced if permanent custody is affirmed. Furthermore, appellant argues, the child's wishes as expressed to the guardian must be viewed in light of her testimony which indicated that the child did not understand the differences between staying in his current placement, permanent custody, and/or adoption, especially where the guardian allegedly assumed that placement would facilitate contact despite a grant of permanent custody.

{¶42} However, while maintaining sibling contact is an important consideration and hopefully can still be arranged, upon review of the record and the findings of fact and conclusions of law therein, we conclude the trial court's grant of permanent custody of A.M. to SCDJFS was made in the consideration of the child's best interest and did not constitute an error or an abuse of discretion.

**{¶43}** Appellant's Third Assignment of Error is overruled.

**{¶44}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Farmer, J., concur.

_____

_____

_____

JUDGES

JWW/d 1122

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF:                    :
                                     :
                                     :
    A.M.                             :        JUDGMENT ENTRY
                                     :
                                     :
    MINOR CHILD                      :        Case No. 2011 CA 00182


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.

Costs assessed to appellant.


_____


_____


_____

                                          JUDGES